0475

J. Carroll RUSHING, Respondent, v. INTEX PRODUCTS, INC., Appellant.

(330 S. E. (2d) 555)

Court of Appeals

*Bradford W. Wyche,* of *Wyche, Burgess, Freeman & Parham, P.A.,* Greenville, *for appellant.*

*Julian W. Dority,* of *Dority & Flint,* Greenville and *R. Wayne Byrd,* of *Scott & Byrd,* Florence, *for respondent.*

Heard March 27, 1985.

Decided May 20, 1985.

CURETON, Judge:

This is a declaratory judgment action to determine ownership of two patents. The circuit court ordered that respondent J. Carroll Rushing assign his title to the patents to appellant Intex Products, and that Intex pay Rushing one-third of all remunerations it receives from commercializing the patents. Intex appeals and contends the court erred in ordering it to share proceeds from use of the patents with Rushing because Rushing did not plead facts upon which monetary relief could be granted. We agree and reverse and remand.

The case involves a dispute between Intex, the employer, and Rushing, the employee, over ownership of two patents of concepts developed by the employee. Rushing conceived the idea of using ultrasonics to clean the felt on papermaking machines after learning that Sonoco, a manufacturer of a product for Intex, was having difficulty keeping felts on its

machines clean. Both Intex and Sonoco committed their money and manpower to developing the idea into a marketable process.

At about mid-point the project, Rushing, Intex and Sonoco reached an understanding that a third company to be owned by both Intex and Sonoco would be formed. This company would own the patents of the processes. Shortly thereafter, in January 1978, Intex's president wrote Rushing suggesting that he negotiate with Sonoco "for the formation of a third company to be owned 40% by Sonoco, 40% by Intex, and 20% would be reserved to you as an incentive bonus ... If other arrangements are made on Sonoco's percentage, the ratio of Intex equity to yours will be maintained." Rushing responded, "I accept your proposal which will result in J. Carroll Rushing owning 33⅓ of the Intex portion of this venture for concept and development."

After several years of experimentation by Rushing and a couple of Sonoco employees, two patents of the ultrasonics process were obtained. One patent listed Rushing as the sole inventor and the other listed Rushing as the joint inventor with two Sonoco employees.

Rushing resigned from employment with Intex several months after the patents were obtained but continued to promote the project. He was responsible for linking Sonoco with a Japanese company with whom Sonoco, authorized by Intex, entered into a know-how license agreement.

Approximately four months after Rushing's resignation, Intex asked Rushing to execute an assignment of the patents to it based on a 1971 "Confidential Information and Patent Agreement" Rushing signed shortly after beginning his employment with Intex. The agreement provided that during the term of his employment, all inventions conceived by Rushing would be the property of Intex. Rushing refused to assign the patents to Intex, claiming that the 1971 Agreement was cancelled by a 1976 employment agreement which by its terms provided that "all other noncompetitive and employment agreements" were cancelled. It contained, however, no provision regarding ownership of inventions conceived by Rushing.

In this declaratory judgment action, Intex asked the court to (1) determine the rights and obligations of the parties

under the 1971 Patent Agreement, (2) declare under the Patent Agreement that Intex is the sole owner of the patents, (3) order Rushing to assign the patents to Intex, and (4) grant such other relief deemed proper. Rushing answered and counterclaimed for (1) a declaration that the 1971 Patent Agreement is null and void based on the later 1976 Agreement, (2) a declaration that he owns the patents and (3) other relief deemed just.

The case was tried by the court without a jury. Based on the January 1978 exchange of letters between Rushing and Intex, the court found that Intex had agreed to give Rushing one-third of its share of the ultrasonics project. The court also found that regardless of where legal title lay, equitable title to the patents lay in Rushing, Intex and Sonoco. Therefore, based on its finding that the January 1978 letters constituted a contractual agreement between Rushing and Intex, the court ordered that Rushing assign his title to the patents to Intex and that Intex pay Rushing one-third of all remunerations it receives from manufacturing, licensing or otherwise marketing the processes described in the patents.

On appeal, Intex contends the court erred in deciding issues not raised by the pleadings and granting relief not requested by the parties. Specifically, Intex argues that the issues joined for trial were simply whether Intex was the owner of the patents based on the 1971 Patent Agreement and therefore, whether Rushing should be ordered to assign the patents to Intex, or conversely, whether Rushing was the owner of the patents because the Patent Agreement was cancelled by the 1976 Agreement. Intex asserts that the court's consideration and construction of the January 1978 letters and its order that Rushing receive a one-third share of Intex's portion of the venture constituted reversible error.

Intex's contentions raise the issue of the scope of relief available in a declaratory judgment action. This issue was addressed in *Langston v. Niles*, 265 S. C. 445, 219 S. E. (2d) 829 (1975). The plaintiff in that case sought a declaratory judgment determining the rights and responsibilities of the parties under an assignment contract. The trial court construed the contract to require the defendant to pay the interest on an obligation which was a subject of the contract. The court therefore ordered the defendant to pay the

interest despite the plantiff's failure to request the affirmative relief. In affirming the trial court's order, the Supreme Court stated:

> Under our view, the plaintiff, by bringing the complaint ... alleging compliance, with the assignment agreement on his own part and breach by the defendant, required the court to determine the parties' respective duties *under the agreement.*

*Id.* at 455, 219 S. E. (2d) at 833 (emphasis added). Here, the only agreements before the court for construction were the 1971 Patent Agreement and the 1976 Employment Agreement.

Neither party alleged the existence of a contract based on the January 1978 letters, the duties or obligations imposed by it, or its subsequent breach. The court therefore had no authority to determine the rights of the parties under the purported 1978 agreement.

In a declaratory judgment action, the court is clearly authorized to grant affirmative relief not requested if the party has pleaded facts upon which such relief may be granted. *Bank of Augusta v. Satcher Motor Company,* 249 S. C. 53, 152 S. E. (2d) 676 (1967); *cf. Charleston & Western Carolina Railway Co. v. Joyce,* 231 S. C. 493, 99 S. E. (2d) 187 (1957) (the court is justified in granting relief on a single issue of a multi-issue controversy where defendant tenders no other issues). In the instant case, the only issue tendered by the parties was whether the 1971 Patent Agreement was still valid or whether it had been cancelled by the 1976 Agreement. Rushing did not allege that the 1978 letters either modified the Patent Agreement or superseded it. In fact, the pleadings contain no reference to the letters. The court therefore erred in considering them and in granting Rushing relief based on them.

During oral argument Intex contended that this Court should affirm the trial court's order that Rushing assign his title to the patents to Intex because Rushing did not appeal from the order. Paraphrasing the Supreme Court in *Collins v. Smith,* 261 S. C. 334, 339, 200 S. E. (2d) 71, 73 (1973), "[We believe that] [u]nder the circumstances of this case, it would be manifestly unjust to allow

[the] judgment ... to stand against [Rushing], in the uncertainty that, if not yoked up with [the judgment against Intex], such a verdict would have been rendered against him." The trial court based its order that Rushing assign the patents to Intex not on a finding that the 1971 Patent Agreement was valid, but on its finding that there was "the understanding that Intex was to be the spokesman for both Rushing's and Intex's interest in the project."

Accordingly, the judgment of the trial court is reversed and the cause is remanded for findings of fact, conclusions of law and entry of judgment based on the theories asserted by the parties in their pleadings and the relief requested by them.

Reversed and remanded.

GARDNER and GOOLSBY, JJ., concur.